No

No. 98-443

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 78

294 Mont. 87

976 P.2d 988

IN RE M.P.M. and A.R.M., Youths in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kevin T. Sweeney; Sweeney & Healow; Billings, Montana

(for the Mother)

For Respondents:

Hon. Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General; Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; Melanie Logan,

Deputy County Attorney; Billings, Montana

D. Michael Eakin; Montana Legal Services Association;

Billings, Montana (for the Father)

Steven Kelly; Attorney at Law; Billings, Montana

(for Northern Cheyenne Tribe)

Marcia Good Sept; Children's Law Office; Billings, Montana

(Guardian Ad Litem)

Submitted on Briefs: February 4, 1999

No

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Yellowstone County Attorney filed a petition for temporary investigative authority on behalf of the Department of Public Health and Human Services in the District Court for the Thirteenth Judicial District, Yellowstone County, to investigate the suspected abuse and neglect of M.P.M and A.R.M. The District Court dismissed the petition for temporary investigative authority, and ordered that the Department immediately turn the children over to the custody of their father. The mother appeals the District Court order. We affirm in part and reverse in part the judgment of the District Court.

¶2 The following issues are presented on appeal:

¶3 1. Did the District Court err when it agreed to take judicial notice of a guardianship action involving M.P.M. and A.R.M. and then dismissed the petition for temporary investigative authority without reviewing the guardianship file?

¶4 2. Did the District Court exceed its authority when it ordered the Department of Public Health and Human Services to deliver M.P.M. and A.R.M. to their father's custody after the Court had dismissed the petition for temporary investigative authority?

FACTUAL BACKGROUND

¶5 In June 1994, the Department of Public Health and Human Services began receiving reports regarding the mother of M.P.M. The reports raised concerns for the welfare of the child because of alleged drug use in the home in the child's presence. Thereafter, Department social workers made numerous unsuccessful attempts to contact the mother.

In 1996, she had another child, A.R.M. Reports of drug use and child neglect continued through 1998. The youths' mother had been living with her mother, who had been caring for the children periodically for several years. In the fall of 1997, the maternal grandmother filed a petition in the District Court for the Thirteenth Judicial District requesting guardianship of the children. However, that petition was ultimately dismissed by District Judge Russell Fagg.

¶6 In February 1998, Department social workers requested that the mother take a urinalysis. The urinalysis was positive for methamphetamines. The mother agreed to work with Department social workers and not to see her children while undergoing drug evaluation and treatment. The Department, at that time, informed the grandmother that she would need to care for the children.

¶7 On May 29, 1998, the Yellowstone County Attorney, on behalf of the Department, filed a petition for temporary investigative authority (TIA) in the Thirteenth Judicial District Court, before Judge Diane Barz. The petition asked the District Court to grant the Department the authority to investigate the suspected abuse and neglect of the two minor children by their parents. The petition, in relevant part, also asked the District Court to grant the Department the authority to: (1) place the children somewhere appropriate for their protection; (2) obtain necessary and reasonable medical, dental, and psychological evaluations and for treatment of the children; (3) obtain a drug and alcohol evaluation of the father; (4) require that the mother follow the recommendations of her chemical dependency evaluation and that the Department be provided with her treatment records; (5) prohibit the parents from visiting or contacting the children until the Department deemed it appropriate; and (6) appoint a guardian ad litem to represent the best interests of the children. On June 3, 1998, the District Court appointed Marcia Good Sept and/or Damon L. Gannet as guardian ad litem for the children. The children's paternal grandfather and the Northern Cheyenne Tribe both intervened in the action, since the children are either enrolled in, or eligible for enrollment in, the Tribe.

¶8 In compliance with § 41-3-403, MCA, Judge Barz ordered a show cause hearing at which to consider the Department's petition. At the show cause hearing, the Deputy County Attorney offered the order and memorandum from the guardianship proceeding as evidence. Rather than admit it, the court stated that it would take judicial notice of the document and look at the original. However, at the end of the hearing, the court dismissed the petition for TIA without reviewing the order and memorandum or any of the records in the guardianship proceeding. In addition to denying the petition for TIA, the court ordered

the Department to immediately place the children with their father.

¶9 The mother has appealed from the District Court's dismissal of the TIA proceeding and order requiring the Department to return the children to their father. She contends the District Court erred by not reviewing the guardianship file before dismissing the petition for TIA. The guardian ad litem has filed a brief supporting the mother's argument.

¶10 The Department argues on appeal that the District Court exceeded its authority when it ordered the Department to transfer custody of the children to their father after it had dismissed the TIA petition.

¶11 The youths' father and the Northern Cheyenne Tribe filed a joint appellate brief in which they assert that the District Court did not err in failing to review the guardianship action, and that the court had the discretion to weigh the evidence. They further assert that even if the court erred by disregarding the guardianship file, it was harmless error because the Indian Child Welfare Act would have required that any action by the State be supported by testimony from an expert witness, and no expert evidence was presented. Additionally, they contend that 25 U.S.C. § 1912(d) (1998), would have required proof that remedial efforts had been unsuccessful in keeping the children in the custody of their parents, and no evidence of that type was offered.

## STANDARD OF REVIEW

¶12 We review a district court's conclusions of law in a youth in need of care case to determine whether its conclusions are correct. *See In re J.J.G.* (1994), 266 Mont. 274, 281, 880 P.2d 808, 812. We review findings of fact to determine whether they are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. We review evidentiary rulings for an abuse of discretion. *State v. Abe*, 1998 MT 206, ¶ 44, 965 P.2d 882, 888, ¶ 44, 55 St. Rep. 876, 880, ¶ 44.ISSUE 1

¶13 Did the District Court err when it agreed to take judicial notice of a guardianship action involving M.P.M. and A.R.M. and then dismissed the petition for temporary investigative authority without reviewing the guardianship file?

¶14 The children's mother and the guardian ad litem contend that it was incumbent upon the District Court to examine the guardianship file prior to dismissing the petition for temporary investigative authority. In response, the father and the Northern Cheyenne

Tribe argue first that the District Court had the discretion to weigh the evidence presented at the show cause hearing; and, second, that assuming the District Court erred, the error was harmless because the requirements of the Indian Child Welfare Act (ICWA) for foster care placement or termination of parental rights had not been met.

¶15 The State conceded in documents filed in the District Court that M.P.M. and A.R.M. are Indian children and that the Act applies.

¶16 The Indian Child Welfare Act provides in relevant part:

(d) Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under state law shall satisfy the court that <u>active efforts have been made to provide remedial services</u> and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

(e) No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including <u>testimony of qualified expert witnesses,</u> that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(d) and (e) (1998) (emphasis added).

¶17 Section 1912(d) of the ICWA requires that active efforts be made to provide remedial services and rehabilitation programs to prevent the breakup of the family. At the show cause hearing, Department social workers testified that they had not met the father nor had any form of contact with him. They testified that the only contact they did have with the family was with the mother, the children, the maternal grandmother, and the paternal grandfather. The father testified that he had not met any of the Department social workers. The father could not have been offered remedial or rehabilitative services if the Department had not had any contact with him. Therefore, the requirement that remedial or rehabilitative services be provided to prevent the breakup of the family was not met.

¶18 The father and Tribe also argue that the qualified expert witness requirement of the ICWA was not satisfied. The only testimony presented at the show cause hearing was from two Department social workers and the children's father. The father and the Tribe

contend that social workers are not experts. We have concluded that it is possible for a social worker to be an expert witness, but that in ICWA cases, special Department of Interior guidelines exist that should be considered when deciding whether the expert is qualified. *See In re M.E.M.* (1981), 195 Mont. 329, 336-37, 635 P.2d 1313, 1317-18. In *In re M.E.M.*, we did not decide whether it was error to admit the testimony of the social worker as expert testimony. We did, however, conclude that:

In deciding whether there is proper foundation for an expert opinion, the trial court should consider the Department of Interior guidelines which provide:

"b. Persons with the following characteristics are most likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings:

"(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.

"(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

"(iii) A professional person having substantial education and experience in the area of his or her specialty." 44 Fed.Reg. 67593 (1979).

*In re M.E.M.*, *195 Mont. at 336-37, 635 P.2d at 1317-18. There is no indication in the record that the Department of Interior guidelines were considered. Nor do we find from our review of the record any other foundation which would qualify either of the social workers as experts pursuant to the ICWA. As a result, the qualified expert witness requirement of the ICWA was not met.*

¶19 In order for courts to grant TIA petitions when Indian children are involved, the requirements of the ICWA must be met. The requirements of the ICWA, 25 U.S.C. § 1912

(d) and (e), were not satisfied in this case. Therefore, we conclude that the District Court could not have granted temporary investigative authority even if it had reviewed the guardianship file, and its failure to do so, if erroneous, was harmless.

## ISSUE 2

¶20 Did the District Court exceed its authority when it ordered the Department to deliver M.P.M. and A.R.M. to their father's custody after the court had dismissed the TIA petition?

¶21 The Department contends that the District Court lacked the authority to order the Department to return M.P.M. and A.R.M. to the custody of their father. The Department argues that because the petition for TIA was dismissed, the Department was not authorized to act on behalf of the children. Therefore, the District Court could not order the Department to turn the children over to the custody of their father. The Department further argues that upon dismissal of the petition for TIA, the matter then became one involving a custodial issue over which neither the Department nor the court had authority. Section 41-3-403, MCA, establishes the procedures required once the petition for TIA and protective services is filed, and delineates what relief the court may grant when it determines that the protection of youths is required. It does not address what occurs upon the dismissal of a petition for TIA.

¶22 The only statutory provision discussing post-dismissal procedures is § 41-3-404(4)(a), MCA, entitled "Adjudicatory hearing--temporary disposition." Section 41-3-404(4)(a), MCA, provides: "If the court determines that the youth is not an abused or neglected child, the petition must be dismissed and any order made pursuant to 41-3-403 must be vacated." In this case, the orders made pursuant to § 41-3-403, MCA, granted the Department the authority to place the children in protective placement between the time of filing the petition for TIA and the show cause hearing. During that time, however, the Department did not place the children because they were already with their maternal grandmother. Therefore, when the District Court vacated the orders issued following the filing of the petition for TIA, as required by § 41-3-404(2), MCA, it did not have the authority to order the Department to place the children with their father. Nowhere in the statutory framework is the District Court authorized to grant the Department the authority to place the children with one parent as opposed to the other following dismissal of the petition for TIA.

¶23 We have stated in the past that "[i]n determining legislative intent, an express mention of a certain power or authority implies the exclusion of nondescribed powers." See *State*

*ex rel. Jones v. Giles* (1975), 168 Mont. 130, 133, 541 P.2d 355, 357 (citing *Reed v. Reed* (1956), 130 Mont. 409, 304 P.2d 540). The Legislature has adopted the methods by which courts may grant the Department the authority to act. Courts cannot authorize the Department to act where such authority has not been legislatively granted. *See Reed*, 130 Mont. at 414, 304 P.2d at 592. To do so would, in effect, act as a judicial amendment to the child abuse and neglect statutes, and "such authority has not been committed to us." *See Reed*, 130 Mont. at 414, 304 P.2d at 592.

¶24 We conclude that the District Court exceeded its authority when it ordered that the children be turned over to the custody of their father after dismissing the petition for TIA. The judgment of the District Court by which it ordered the Department to return the children to the custody of their father is reversed. The District Court's dismissal of the petition for TIA is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, concurring in part and dissenting in part.

No

¶25 I concur in the Court's opinion on issue one, but respectfully dissent from that opinion on issue two.

¶26 My problem with issue two does not relate to the Court's legal analysis of the issue presented by the Department. The problem, however, is that the Department did not file a notice of cross-appeal pursuant to Rule 5(a)(3), M.R.App.P., in order to raise the question of the District Court's authority to order the Department to return the children to their father. Therefore, that issue is not properly before us, we have no jurisdiction to entertain it and I dissent from the Court's decision to do so.

/S/ KARLA M. GRAY