FILED

03/27/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0419

DA 17-0419

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 60

IN THE MATTER OF:

L.D.,

     A Youth in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighth Judicial District,<br>In and For the County of Cascade, Cause No. CDN 14-09<br>Honorable John A. Kutzman, Presiding Judge |

COUNSEL OF RECORD:

     For Appellant:

          Shannon Hathaway, Montana Legal Justice, PLLC, Missoula, Montana

     For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

          Joshua A. Racki, Cascade County Attorney, Matthew S. Robertson, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs: January 17, 2018

Decided: March 27, 2018

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1    Birth mother, S.D. (Mother), appeals the judgment of the Montana Eighth Judicial District Court, Cascade County, terminating her parental rights to her minor child, L.D. We restate the dispositive issue as:

> *Whether the District Court erroneously proceeded with termination of parental rights in the absence of a conclusive tribal determination regarding L.D.'s status as an Indian child as defined by the Indian Child Welfare Act?*

We reverse and remand for further proceedings consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2    In December of 2013, the Montana Department of Health and Human Services, Child and Family Services ("Department") became involved with two-year-old L.D. after her older half-sister, A.O., revealed that L.D.'s father ("Father") had sexually abused A.O. Father was Mother's domestic partner and A.O.'s step-father.[1]  On January 9, 2014, the State filed separate petitions for emergency protective services, youths in need of care ("YINC") adjudication, and temporary legal custody of L.D. and A.O. pursuant to Title 41, chapter 3, MCA.  Mother and A.O. were enrolled members of the Chippewa Cree Tribe ("Tribe"), L.D. and Father were not.  The State's petition regarding L.D. asserted that "[t]o the best of Petitioner's belief," L.D. "is an Indian child for the purposes of the Indian Child Welfare Act [("ICWA")]."  On January 20, 2014, the State notified the Tribe by registered mail that the District Court had set a show-cause hearing on the State's petitions for

---

[1]  A.O.'s statement ultimately resulted in the unsuccessful criminal prosecutions against Father (sexual intercourse without consent) and Mother (felony child endangerment).

February 11, 2014. The notice informed the Tribe of the names and whereabouts of L.D.'s natural parents, notified the Tribe of its right to intervene pursuant to ICWA, 25 U.S.C. § 1911, and stated the Department's intent to comply with ICWA kinship-placement requirements during the pendency of the proceedings.

¶3 At the initial show-cause hearing on February 11, 2014, the State presented evidence in support of its separate YINC petitions. Through counsel, Mother advised the District Court that she had been unsuccessful in her attempt to enroll L.D. as a member of the Tribe. Mother and Father further stated their beliefs that L.D. was not eligible for enrollment in the Tribe. Uncertain, the State assured the Court that it would further investigate ICWA eligibility but moved to proceed under ICWA in the interim. The District Court ultimately adjudicated both children as YINC and maintained them in the Department's protective custody pending dispositional hearing.

¶4 At the dispositional hearing on February 25, 2014, Mother stipulated to a Department-proposed treatment plan that required her to maintain contact and cooperation with the Department, complete parenting classes, maintain supervised visitation with L.D., submit to random alcohol and drug testing, successfully complete chemical dependency treatment, undergo a mental health evaluation and any recommended counseling, and complete Department-provided family-based services. On Mother's stipulation, the District Court granted the Department temporary legal custody of L.D. for a period of six months and ordered Mother to complete the stipulated treatment plan. The

3

dispositional-hearing transcript indicates the awareness of the Court and parties that L.D.'s status as an Indian child remained undetermined.

¶5     At an interim status hearing on May 27, 2014, the District Court noted, based on the report of the Department social worker, that Mother was then in compliance and progressing with her treatment plan. The State further advised that the Tribe was aware of the status of the case and apparently would not intervene or assume jurisdiction. At the subsequent six-month review hearing on August 26, 2014, based on Mother's continuing treatment plan progress and parallel stipulation to a permanent kinship guardianship for A.O., the District Court granted the State's motion to extend the Department's temporary legal custody of L.D. for another six months to allow Mother additional time to work her treatment plan.

¶6     Six months later on January 7, 2015, the State filed a petition for termination of Father's parental rights to L.D. based on alleged treatment plan non-compliance and failure. *Inter alia*, the petition stated that the State "believed" that L.D. was "an Indian child subject to the Indian Child Welfare Act." The State served the termination petition on the Tribe and served Father by publication. The Tribe did not respond at the subsequent termination hearing on April 21, 2015. At the termination hearing, Father did not personally appear but appeared through appointed counsel. Teresa McCracken, Licensed Addiction Counselor, Micaela Stroop, Child Protection Specialist, and Anna Fisher, an ICWA expert, testified on behalf of the State. By written findings of fact, conclusions of law, and order issued May 8, 2015, the District Court terminated Father's parental rights

4

under § 41-3-609(1)(f), MCA. The Court's findings of fact included that L. D. is an Indian child pursuant to ICWA, that there is a presumption that termination of parental rights is in the best interest of L.D. pursuant to § 41-3-604(1), MCA, and that returning L.D. to the custody of Father would likely result in serious emotional or physical damage to the child.

¶7 After an extension of temporary legal custody to afford Mother additional time to work on her treatment plan, the State filed a petition for termination of Mother's parental rights to L.D. and A.O. on August 11, 2015, based on alleged treatment plan non-compliance and failure. *Inter alia*, the petition asserted that ICWA continued to govern the proceedings because both L.D. and A.O. were Indian children. At the termination hearing on June 1, 2016, Mother stipulated to a court-ordered permanent kinship guardianship for A.O., thus eliminating the need to terminate Mother's rights to A.O. As the termination hearing then progressed regarding L.D., the State's ICWA expert, Anna Fisher, testified in sum that the Department had not engaged in active efforts to avoid breaking up this Indian family and that restoring L.D. to Mother's custody would not be likely to result in serious emotional or physical damage to the child. Based on that testimony, the District Court ultimately denied the State's petition to terminate Mother's parental rights and then extended the Department's temporary legal custody of L.D.

¶8 Four months later, on October 5, 2016, the State filed a second petition to terminate Mother's parental rights to L.D., again based on alleged treatment plan non-compliance and failure. At the termination hearing on November 28, 2016, the State asserted for the first time that L.D. was not an Indian child. Hearing no objection from Mother, the District

Court preliminarily determined that L.D. was not an Indian child and that ICWA therefore did not apply to the termination proceeding. The hearing then proceeded, and the State presented evidence in support of termination through the Department social worker and various treating professionals involved in the case. Based on its assertion and the Court's resulting concurrence that ICWA did not apply, the State did not present testimony from an ICWA expert in support of its petition for termination.

¶9 By written findings of fact conclusions of law and order filed June 16, 2017, the District Court terminated Mother's parental rights to L.D. based on treatment plan non-compliance and failure under the non-ICWA, "clear and convincing" evidence standard of § 41-3-609(1), MCA. The Court's order noted the State and Mother agreed that ICWA did not apply because L.D. was not an Indian child as defined by ICWA. The Court criticized the State for failing to notify it that L.D. was not an Indian child until eighteen months into the case on the day of the second termination hearing. Upon terminating Mother's rights, the Court granted the Department permanent legal custody of L.D. Mother timely appeals.

## STANDARDS OF REVIEW

¶10 We review a district court decision to terminate parental rights for an abuse of discretion under the applicable standards of Title 41, chapter 3, MCA, and ICWA, Title 25, chapter 21, U.S.C. *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. In this context, a court errs and abuses its discretion if it terminates parental rights based on clearly erroneous findings of fact, erroneous conclusions of law, or otherwise "acts arbitrarily,

6

without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *In re D.B*, ¶ 18; *In re A.G.*, 2005 MT 81, ¶ 12, 326 Mont. 403, 109 P.3d 756. Findings of fact are clearly erroneous if not supported by substantial evidence, the court misapprehended the effect of the evidence, or this Court has a definite and firm conviction that the lower court was mistaken. *In re D.H.*, 2001 MT 200, ¶ 14, 306 Mont. 278, 33 P.3d 616. We review conclusions of law de novo for correctness. *In re M.P.M.*, 1999 MT 78, ¶ 12, 294 Mont. 87, 976 P.2d 988.

### DISCUSSION

¶11    *Whether the District Court erroneously proceeded with termination of parental rights in the absence of a conclusive tribal determination regarding L.D.'s status as an Indian child as defined by Indian Child Welfare Act?*

¶12    Congress enacted ICWA in 1978 to "protect the best interest of Indian children and to promote the stability and security of Indian tribes and families. . . ." 25 U.S.C. § 1902. At the core of ICWA is the fundamental assumption that it is in the Indian child's best interest that its relationship to the tribe be protected." *Mississippi Band of Choctaw Indians v. Holyfield et al.*, 490 U.S. 30, 32 n. 24, 109 S. Ct. 1597, 1609 (1989) (quoting *In re Appeal in Pima County Juvenile Action No. S-903*, 635 P.2d 187, 189); *see also* 25 U.S.C. § 1901(5) (congressional finding that the States "have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families"). ICWA imposes heightened federal standards for the removal of Indian children from their families. *See, e.g.*, 25 U.S.C. §§ 1902, 1911, and 1912(d)–(f) (congressional policy, tribal jurisdiction, and requirements for active remedial efforts,

7

qualified expert testimony, and proof beyond a reasonable doubt). ICWA governs state court "child custody proceedings," as defined by 25 U.S.C. § 1903(1), involving an "Indian child," as defined by 25 U.S.C. § 1903(3)–(8). 25 U.S.C. § 1912. Proceedings under Title 41, chapter 3, MCA, are "child custody proceedings" as defined by ICWA.

¶13 All parents have fundamental constitutional rights over the custody and care of their children "which must be protected by fundamentally fair procedures" as a matter of federal and state constitutional due process. *In re J.V.*, 2003 MT 68, ¶ 7, 314 Mont. 487, 67 P. 242. Consequently, we require district courts to make specific findings of fact in compliance with all pertinent statutory requirements before terminating parental rights. *In re D.B.*, ¶¶ 17–18; *In re A.G.,* ¶ 12; *In re J.V.,* ¶ 7. Because ICWA and § 41-3-609, MCA (termination of parental rights based on abuse, neglect, or abandonment), impose different standards for termination of parental rights depending on whether a child is an "Indian child," district courts must first verify the Indian or non-Indian status of a child prior to proceeding with termination proceedings whenever the court has "reason to believe" that the child is an Indian child as defined by ICWA. *See* 25 U.S.C. § 1912(a) (state agency duty to notify the parent/Indian custodian and "Indian child's tribe" of state court child custody proceeding if "court knows or has reason to know that an Indian child is involved"); *see also In re A.G.*, ¶¶ 14-15 (citing *Guidelines for State Courts*; *Indian Child Custody Proceedings* B.1(a), 44 Fed. Reg. 67586 (1979)); *accord Guidelines for State*

*Courts and Agencies in Indian Child Custody Proceedings* [hereinafter "*2015 Guidelines*"] A.3(c), A.4, B.2(a), B.2(b), B.3(d), and B.4(c), 80 Fed. Reg. 10146, 10150–53 (2015).[2]

¶14     ICWA defines an "Indian child" as (1) any unmarried person under age eighteen and (2) who either is "a member of an Indian tribe" or is "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4).  ICWA also defines the related terms "Indian" and "Indian child's tribe." 25 U.S.C. § 1903(3) and (5).  While the question of whether a child is eligible for tribal membership is a question of fact dependent on the child's actual ancestry, *In re A.G.*, ¶ 13 (citing *In re the Adoption of a Child of Indian Heritage*, 543 A.2d 925, 933 (N.J. 1988)), it is a not a question of fact for de novo determination by district courts.  Except as otherwise limited by federal statute or treaty, Indian tribes have the sole power to determine their membership and membership eligibility.  *In re A.G.*, ¶ 13 (citing *Adams v. Morton*, 581 F.2d 1314, 1320 (9th Cir. 1978)).  An Indian tribe's determination of its membership or membership eligibility is conclusive as a matter of law. *In re Adoption of Riffle*, 273 Mont.

---

[2] It is important to note that at the time of this termination hearing, the *2015 Guidelines* were in effect as mere guidelines, 80 Fed. Reg. 10146 (2015).  Subsequently, in December 2016, the Secretary of the Interior incorporated some, if not all, of the *2015 Guidelines* into "minimum Federal standards" for ICWA codified in Title 25, part 23, subpart 1, C.F.R (effective Dec. 12, 2016). *See, e.g.*, 25 CFR 23.101 (eff. Dec. 12, 2016): "The regulations in this subpart clarify the minimum Federal standards governing implementation of the [ICWA] to ensure that ICWA is applied in all States consistent with the Act's express language, Congress's intent in enacting the statute, and to promote the stability and security of Indian tribes and families.").  As such, these "minimum Federal standards" for ICWA, inter alia, further prospectively inform as to the respective duties of the Department and district courts regarding ICWA tribal notice and "Indian child" determinations. *See also* 25 U.S.C. 1912(a) (agency duty to give notice to the Secretary of the Interior "in like manner" if agency cannot determine "the identity or location of the parent or Indian custodian" and affiliated Indian tribe).

237, 242, 902 P.2d 542, 545 (1995). Thus, the threshold questions of fact for district courts are (1) whether the court has reason to believe that a subject child may be an "Indian child" and (2) whether an Indian tribe has conclusively determined that the child is a member or eligible for tribal membership. *See In re A.G.*, ¶¶ 14-17; *In re Riffle*, 273 Mont. at 242, 902 P.2d at 545; *2015 Guidelines* B.2(b), B.3(d), and B.4(c), 80 Fed. Reg. at 10152-53 (2015).[3] Absent a conclusive tribal determination of membership or membership eligibility, a district court may not proceed with termination proceedings under ICWA or § 41-3-609, MCA, if a reason exists to believe that a child may be an Indian child. *In re A.G.*, ¶¶ 14-17. *Accord 2015 Guidelines* B.3(d), 80 Fed. Reg. at 10153 (state "court may not substitute its own determination regarding a child's membership or eligibility for membership in a tribe or tribes."); *see also* 25 U.S.C. § 1912(a) ("No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by" parent/custodian and the tribe/Secretary of the Interior). When a court has reason to believe that a child may be an Indian child, proceeding to termination without a conclusive tribal

---

[3] From the outset, the Department must ask and actively investigate "whether there is reason to believe" a subject child "is an Indian child" and, if so, the Department "must obtain verification, in writing, from all tribes in which it is believed that the child is a member or eligible for membership, as to whether the child is an Indian child." *2015 Guidelines* B.2(a) and B.2(b)(2), 80 Fed. Reg. at 10152–53. For guidance in contacting and providing notice to an Indian tribe, *see 2015 Guidelines* A.4, 80 Fed. Reg. at 10152. In turn, district courts "must ask, as a threshold question . . . whether there is reason to believe" that a subject child "is an Indian child by asking each party to the case, including the guardian ad litem and [Department] representative, to certify on the record whether they have discovered or know of any information that suggests or indicates the child is an Indian child." *2015 Guidelines* B.2(b), 80 Fed. Reg. at 10152. "If an Indian child is a member or eligible for membership in more than one tribe, ICWA requires that the Indian tribe with which the Indian child has the more significant contacts be designated as the Indian child's tribe." *2015 Guidelines* B.4(c), 80 Fed. Reg. at 10153 (with criteria for determining more significant contacts).

determination of tribal membership or eligibility is an abuse of discretion. *See In re A.G.*, ¶¶ 14-17.

¶15 In this case, as early as 2014, the State, through the Department, had reason to believe and, as asserted in its various petition averments and request for the District Court to proceed under ICWA, did believe that L.D. was an Indian child by affiliation with the Chippewa Cree Tribe. Though it gave due notice to the Tribe of the pendency of the initial foster care and subsequent parental rights termination proceedings, there is no evidence that the Department ever formally sought or received a conclusive tribal determination that L.D. was or was not eligible for tribal enrollment. Instead, the Department passively relied on the inaction of the Tribe and the assertions or beliefs of the parents that L.D. was not eligible for tribal membership. However otherwise reasonable, this passive reliance was insufficient to satisfy the Department's ICWA burden to actively investigate further and ultimately make formal inquiry with the Tribe for a conclusive determination of L.D.'s membership eligibility.

¶16 As a direct result of the Department's failure to satisfy its ICWA burden, the District Court proceeded to termination under the State's second termination petition without a conclusive determination from the Tribe, either dispelling or confirming the reason to believe, held by the Court and parties for almost eighteen months, that L.D. may be an Indian child. Like the Department's passive reliance on the parents' statements, the Court's reliance on Mother's stipulation or acquiescence that ICWA did not apply was insufficient as a matter of law to satisfy the Court's threshold duty to obtain a conclusive determination

from an Indian tribe of tribal eligibility prior to proceeding with termination proceedings when a reason exists to believe that the child may be an Indian child. In the manifest presence of such a belief here, only a conclusive determination from the Tribe that L.D. was *not* eligible for tribal enrollment could have cleared the procedural path for the Court to proceed to termination of Mother's rights under the non-ICWA standards of § 41-3-609, MCA. Contrary to the State's assertion, a parent cannot waive application of ICWA by stipulation or acquiescence. Only an Indian tribe can determine whether a child is a member or eligible for tribal membership when, as here, a reason exists to believe that the child may be an Indian child. *In re A.G.*, ¶¶ 14-17.

¶17 While we appreciate the difficult position in which the District Court found itself as a result of the parties' imprudent agreement or acquiescence that ICWA did not apply, it was ultimately the Court's responsibility to demand and ensure strict compliance with ICWA and due process of law regardless of the parties' invitation and escort down the proverbial garden path. Under the circumstances of this case, we hold that the District Court erred and abused its discretion by proceeding to terminate Mother's rights to L.D. without a conclusive tribal determination of L.D.'s tribal membership status and eligibility.

## CONCLUSION

¶18 We hold that the District Court abused its discretion in terminating Mother's parental rights to L.D. without a conclusive tribal determination of tribal membership status and enrollment eligibility. We accordingly reverse and remand for an appropriate threshold determination of whether L.D. is an Indian child based on a conclusive tribal determination

of tribal membership and eligibility. Since Mother does not otherwise challenge the sufficiency or correctness of the District Court's findings of fact, conclusions of law, and judgment under the non-ICWA standards of § 41-3-609, MCA, the Court may re-enter judgment against Mother on the merits of its prior findings of fact and conclusions of law, if it finds and concludes on a conclusive tribal determination that L.D. is not an Indian child. However, upon a finding and conclusion on a conclusive tribal determination that L.D. is an Indian child, the Court shall reset the State's second termination petition for hearing and decision under § 41-3-609, MCA, and applicable ICWA standards.

¶19 Reversed and remanded for further proceedings.

/S/ DIRK M. SANDEFUR

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE
/S/ BETH BAKER