DA 25-0658

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 121

IN THE MATTER OF:

L.C., X.P., AND N.C.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause Nos. ADN-23-015, ADN-23-016, and ADN-23-017
Honorable David J. Grubich, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Gregory D. Birdsong, Birdsong Law Office, Santa Fe, New Mexico

    For Appellee:

        Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant Attorney General, Helena, Montana

        Joshua A. Racki, Cascade County Attorney, Valerie Winfield, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  April 22, 2026

Decided:  June 2, 2026

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     This is a consolidated appeal of Cascade County causes DN 23-15 (involving child L.C.), DN 23-16 (involving child X.P.), and DN 23-17 (involving child N.C.). C.C. (Mother) appeals the Order entered September 2, 2025, by Montana's Eighth Judicial District Court, Cascade County, terminating her parental rights to L.C., X.P., and N.C. (collectively the Children). More specifically, Mother asserts the District Court committed reversible error when it held in its order terminating her parental rights that the Department of Public Health and Human Services, Child and Family Services Division (the Department) made diligent efforts to determine the applicability of the Indian Child Welfare Act (ICWA).

¶2     In response, the Department notes that Mother's parental rights were terminated pursuant to § 41-3-609(1)(f), MCA—the Children have been adjudicated youths in need of care (YINC), Mother did not successfully complete her court-approved treatment plan, and the conduct or condition rendering Mother unfit is unlikely to change in a reasonable period of time—which Mother has not challenged on appeal. Further, the Department asserts the District Court correctly determined the Department made diligent efforts to determine the Children were not Indian children under ICWA.

¶3     We state the issue on appeal as follows:

> *Whether the District Court correctly determined the Department made diligent efforts in determining the applicability of ICWA.*

¶4     We affirm.

2

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     On February 1, 2023, the Department filed its initial petitions in the three underlying causes. The petitions regarding L.C. and N.C. asserted Mother to be their birth mother and their putative father, D.A., to be deceased, and that the Department did not have a reason to know that either L.C. or N.C. was an "Indian child" as defined by ICWA. In its petition regarding X.P., the Department asserted Mother to be X.P.'s birth mother and M.P. to be X.P.'s birth father. The Department further asserted—based on X.P.'s history with the Department indicating X.P.'s father to be an enrolled member of the Blackfeet Tribe—that X.P. may be an Indian child subject to ICWA with possible affiliation with the Blackfeet Tribe.

¶6     To determine whether any of the Children were Indian children, the Department did the following:

- It obtained information from Mother regarding her heritage and those of the Children's birth fathers.

- It obtained information from Mother that X.P. was not a member of an Indian tribe.

- It identified that M.P., X.P.'s birth father, was born in North Carolina and was not currently a member of a tribe but may be eligible for enrollment with the Blackfeet Tribe.

- It sent a request for verification to the Blackfeet Tribe requesting the Tribe identify if any of the Children were enrolled or enrollable in the Tribe.

- Based on its history with X.P. providing it a reason to know X.P. to be an Indian child, it provided the Blackfeet Tribe, by certified mail, with notice of hearing and

3

an accompanying copy of the petition which included the hearing date, X.P.'s name and birthdate, Mother's name and address, M.P.'s name and address, and its belief X.P. was enrolled or enrollable in the Blackfeet Tribe.

- It received a letter dated February 6, 2023, from the Blackfeet Tribe indicating X.P. was not enrolled or enrollable as a member of the Blackfeet Tribe.

- It received a letter dated February 27, 2023, identifying Mother and putative father, D.A.,[1] from the Blackfeet Tribe verifying L.C. was not a member of the Blackfeet Tribe.

- It received a letter dated February 27, 2023, identifying Mother and putative father, D.A.,[2] from the Blackfeet Tribe verifying N.C. was not a member of the Blackfeet Tribe.

- It completed the ICWA Checklist (DPHHS-CFS/ICWA 251 and 252) with Foster Care Case Plan.

- It participated in the show cause hearing on April 26, 2023, and discussed with the District Court and Mother's counsel the Department's efforts to determine the applicability of ICWA and basis for its position that ICWA did not apply.

- It participated in multiple hearings thereafter where the District Court: (1) repeatedly found the Department made diligent efforts to determine the applicability of ICWA; (2) found the Children not to be Indian children such that

---

[1] The letter though spelled D.A.'s last name with a "d."

[2] This letter also spelled D.A.'s last name with a "d."

ICWA did not apply; and (3) ordered that should any party learn that the Children may be Indian children, that party shall immediately file notice with the District Court and other parties. Following which, Mother did not object or challenge the court's determinations, nor did she request or bring forth additional evidence showing any of the Children to be Indian children, or file any notice or other pleading to amend, reconsider, or challenge the Department's efforts to determine the applicability of ICWA.

¶7 Both parties outline the basic factual history of the combined causes from the filing of the petitions through the order terminating Mother's parental rights. As Mother has only challenged the District Court's determination that the Department made diligent efforts to determine if the Children were Indian children such that ICWA would or would not apply, we do not discuss the allegations of removal, the development of Mother's treatment plan, Mother's failures in accomplishing the requirements of her treatment plan, or other matters not related to the determinations by the Department and the District Court that the Children were not Indian children such that the heightened standards of ICWA did not apply.

¶8 In CPS Lindland's affidavit regarding X.P., CPS Lindland explained that she had information related to X.P. due to prior history with the Department, and from that history she had reason to believe that X.P.'s father, M.P., was an enrolled member of the Blackfeet Tribe. She attested X.P. was not enrolled but may be enrollable as a member of the Blackfeet Tribe. In support of the initial petition in L.C.'s case, CPS Lindland attested L.C. was born on an Indian reservation, that L.C.'s putative father was D.A., and as per Mother, D.A. was deceased. She further attested that, to the best of her knowledge, there

5

was no reason to know L.C. to be an Indian child. As to N.C., CPS Lindland averred D.A. was the presumptive father, and N.C. was not residing on an Indian reservation at the time of removal. She stated she had no reason to know N.C. to be an Indian child.

¶9 On March 14, 2023, the District Court issued an Order which found:

> The Department made diligent efforts to determine the applicability of the Indian Child Welfare Act, 25 U.S.C. §§ 1901, et. seq. (ICWA), and the State has no reason to know the Youths are "Indian children" as defined by the Indian Child Welfare Act at 25 U.S.C. § 1903. The Indian Child Welfare Act does NOT apply.

The Order also specifically provided: "Should any party learn that the [Children] may be Indian children, that party shall immediately file notice with the [c]ourt and other parties." The District Court similarly found the Department made diligent efforts to determine the applicability of ICWA and ordered the parties to immediately file notice if they learned the youth were Indian children in the subsequent orders of March 28, 2023, April 28, 2023, June 5, 2023, September 8, 2023, November 22, 2023, February 14, 2024, and December 6, 2024.

¶10 At the show cause hearing on April 26, 2023, the Department's ICWA qualified expert witness (QEW) did not testify as the parties acknowledged the letters from the Blackfeet Tribe provided notice that none of the Children were enrolled or enrollable as members in the Blackfeet Tribe. Mother's counsel specifically advised the court that testimony from the QEW was not necessary, and if something changed indicating ICWA applied, the case could revert back to the higher ICWA standard again. In response, the District Court advised that based on the documents filed, ICWA did not apply but if something changed, it directed the parties to inform the court so the matter could be

6

reviewed based on any new information. Mother's counsel did not relay any information or claim that any of the Children were Indian children, and she did not object or assert the Department had not made diligent efforts to determine the status of the Children as Indian children and the applicability of ICWA.

¶11 At the status hearing on March 26, 2025, the Department informed the District Court that it had the spelling of L.C. and N.C.'s father's name wrong—it had spelled his name as D.Ad. when it should have been D.At., but no objection or challenge to the determination that ICWA did not apply was made upon disclosure of this error. Following a later termination hearing, the District Court terminated Mother's parental rights in its order of September 2, 2025, again finding:

> The Department made diligent efforts to determine the applicability of the Indian Child Welfare Act, 25 U.S.C. §§ 1901, et. seq. (ICWA), and the State has no reason to know the Youths are "Indian children" as defined by the Indian Child Welfare Act at 25 U.S.C. § 1903. On February 6, 2023, the Blackfeet Tribe, c/o Kathy Calf Boss Ribs, ICWA Coordinator, sent notification that the Youths are NOT enrolled or eligible for enrollment with the Blackfeet Tribe.

**STANDARD OF REVIEW**

¶12 We review a court's decision to terminate parental rights for abuse of discretion. *In re A.S.*, 2016 MT 156, ¶ 11, 384 Mont. 41, 373 P.3d 848. "In this context, a court errs and abuses its discretion if it terminates parental rights based on clearly erroneous findings of fact, erroneous conclusions of law, or otherwise acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *In re L.D.*, 2018 MT 60, ¶ 10, 391 Mont. 33, 414 P.3d 768 (citation and internal quotation marks omitted). We review a district court's findings of fact for clear error and its

7

conclusions of law for correctness. *In re M.V.R.*, 2016 MT 309, ¶ 23, 385 Mont. 448, 384 P.3d 1058.

**DISCUSSION**

¶13 *Whether the District Court correctly determined the Department made diligent efforts in determining the applicability of ICWA.*

¶14 For the first time, Mother now asserts the Department failed to make diligent efforts to determine the Children's Indian status and that the District Court erred in concluding it did. Mother asserts the February 6, 2023 letter from the Blackfeet Tribe stating X.P. was not enrolled or eligible for enrollment in the Tribe contains no name for X.P.'s parents, indicating the Tribe did not search the tribal rolls for X.P.'s father, M.P. The Department, however, knew the name of X.P.'s father, did not provide that name in its verification request, and "did not subsequently advise the Tribe of the oversight or verify whether X.P. was enrolled or eligible for enrollment in the Blackfeet Tribe."

¶15 While the February 6, 2023 letter from the Blackfeet Tribe contains no name for X.P.'s parents, Mother acknowledges the Department did serve the Blackfeet Tribe with Notice of Hearing in which it identified Mother as X.P.'s mother and M.P. as his putative father. Mother does not see this notice as a means of providing additional information to the Blackfeet Tribe to determine X.P.'s status as an Indian child, but rather asserts it shows two facts—the Department was aware of the identity of X.P.'s father and the Department failed to provide that information to the Tribe in its verification request—which establish that the Blackfeet Tribe did not check its rolls for the membership or eligibility for membership of X.P.'s father.

8

¶16 The Department maintains it consistently described M.P. as X.P.'s putative father until it confirmed M.P. was X.P.'s biological father through paternity testing. The Department asserts Mother bases her entire argument on the assumption the Department failed to include M.P.'s name on its request for verification, which ignores that the Department consistently included that information in its filings—including the Notice of Hearing mailed via certified mail to the Blackfeet Tribe shortly before it received a response. The Department contends there is nothing in the record indicating M.P. or X.P. to be enrolled or enrollable members of the Blackfeet Tribe.

¶17 As to L.C. and N.C., Mother asserts the letter from the Blackfeet Tribe stating neither was enrolled or enrollable shows their father's name was not correct—showing it as D.Ad., not D.At.—and, "when the Department became aware of the error, it did not provide the correct name to the Blackfeet Tribe or request the Tribe verify whether the birth father was enrolled or eligible for enrollment in the Tribe." The Department advised the District Court of this error at hearing on March 26, 2025. In response to this information, Mother did not object or assert the Department failed to make diligent efforts to establish the status of L.C. or N.C. as Indian children, nor did Mother assert them to be Indian children or request to review the District Court's prior determination that ICWA did not apply.

¶18 The Department maintains the record is void of any reason to know L.C. or N.C. is an Indian child. It explains that as L.C. and N.C.'s father was only a putative father, the spelling or misspelling of his last name is irrelevant as under ICWA only a biological father, not a putative father, can provide the basis for the children's enrollment or eligibility

for enrollment. As such, the Tribal status of D.A.—whether spelled as D.Ad. or D.At.—could not have supported a finding that either L.C. or N.C. was an Indian child.

¶19 Enacted in 1978 to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families," ICWA imposes heightened federal standards for the removal of Indian children from Indian families. *See, e.g.*, 25 U.S.C. §§ 1902, 1911, and 1912(d)-(f). Whether ICWA applies to a proceeding under Title 41, chapter 3, MCA, depends on whether the subject child is an "Indian child." *See* 25 U.S.C. § 1912(a). In pertinent part, ICWA defines an "Indian child" as a person "under age eighteen" who is either "a member of an Indian tribe" or "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). *See also* 25 U.S.C. § 1903(3) and (5) (defining related terms "Indian" and "Indian child's tribe"). When the court "has reason to know that an Indian child is involved" in an involuntary foster care or parental rights termination proceeding under Title 41, chapter 3, MCA, the Department must, upon reasonably diligent investigation of the "reason to know," immediately "notify . . . the Indian child's tribe" of "the pending proceedings and of [the tribe's] right of intervention" by registered mail, return receipt requested. 25 U.S.C. § 1912(a); *S.R.*, ¶ 15 (citing 25 U.S.C. §§ 1903(1)(i)-(ii), 1912(a), (d)-(f), 1915, 1922 and 25 C.F.R. 23.2 (2016)). As referenced in 25 U.S.C. § 1912(a), a "reason to know" that a child is an Indian child is "no more than awareness of a reasonable basis upon which to believe" that the subject child is an Indian child. *S.R.*, ¶ 16 (internal punctuation and citations omitted). A court may thus have a "[']reason to know that an Indian child is involved' if, *inter alia*, '[a]ny participant' or 'officer of the court involved in the proceeding' either 'informs the court that the child is an Indian child' or that the person has 'information indicating that the child is an Indian child.'" *S.R.*, ¶ 16 (quoting 25 C.F.R. 23.107(c)(1)-(2) (2016)). What constitutes a "reason to know" that a child is eligible for tribal enrollment "is a factual matter that will vary based on the particular record in each case." *S.R.*, ¶ 20. However, a "reason to know" generally "requires something more than a bare, vague, or equivocal assertion of possible Indian ancestry without reference to any identified Indian ancestors with a reasonably suspected tribal connection." *S.R.*, ¶ 21 (citing *In re Jeremiah G.*, 172 Cal. App. 4th 1514, 92 Cal. Rptr. 3d 203, 207-08 (Cal. Ct. App. 2009) and *In the Interest of Z.H.*, 740 N.W.2d 648, 653 (Iowa Ct. App. 2007)). . . . [I]t is the duty of the Department, and ultimately the court, to obtain a tribal eligibility determination from the subject tribe when there is a "reason to know" that a child is eligible for enrollment in a particular tribe. *S.R.*, ¶ 18 (internal citations omitted). *See also L.D.*, ¶¶ 14 and 17.

*In re L.H.*, 2021 MT 199, ¶ 11, 405 Mont. 173, 492 P.3d 1218 (footnotes omitted). "What constitutes a reasonable basis upon which to believe that a child may be eligible for tribal enrollment is a factual matter that will vary based on the particular record in each case." *In re S.R.*, 2019 MT 47, ¶ 20, 394 Mont. 362, 436 P.3d 696.

¶20    Upon our review of the record, the District Court's finding that the Department made diligent efforts to determine the applicability of ICWA regarding X.P. was not clearly erroneous.  Prior to X.P.'s removal in this case, the Department had previous history with X.P.  From that history, the Department knew X.P.'s father, although not an enrolled member of the Tribe, may be affiliated with the Blackfeet Tribe.  The Department investigated further by completing the ICWA Checklist forms and sending a request for verification to the Blackfeet Tribe.  Via certified mail on February 7, 2023, it further sent the Blackfeet Tribe a copy of the petition and a Notice of Hearing, providing the Tribe with the hearing date, X.P.'s name and birthdate, Mother's name and address, M.P.'s name and address, and its belief X.P. was enrolled or enrollable in the Blackfeet Tribe.  On that same date, the Department received the letter from the Blackfeet Tribe verifying X.P. was not enrolled or enrollable in the Blackfeet Tribe and indicating that if the Department became aware of further information as to the ancestry of the parents, it should provide it to the Tribe to revisit the matter.  Although the Tribe's verification letter was received before the Tribe could have obtained the notice of hearing together with the copy of the initial petition, upon the Tribe's receiving the additional information contained in the notice of hearing and accompanying petition, the Blackfeet Tribe did not revise its verification that X.P. was

11

not enrolled or enrollable in the Blackfeet Tribe. "Whether a child is eligible for tribal membership and is thus an Indian child is a question of fact for exclusive determination by the Indian tribe(s)," such that the verification letter which was never revised or amended by the Blackfeet Tribe became conclusive proof that X.P. was not an Indian child subject to ICWA. *S.R.*, ¶ 18; 25 C.F.R. § 23.108(b). On these particular facts, nothing in the record supports that the District Court clearly erred in its determination that the Department made diligent efforts to determine the applicability of ICWA to X.P.

¶21 The District Court's finding that the Department made diligent efforts to determine the applicability of ICWA regarding L.C. and N.C. was likewise not clearly erroneous. From the outset of the case, nothing in the record suggested or provided any "reason to know" that either L.C. or N.C. were Indian children. Mother reported D.A. to be deceased but did not provide any information that he was a member or had any affiliation with any Indian tribe. Out of an abundance of caution, the Department sent a verification request to the Blackfeet Tribe, which unfortunately contained a typographical error spelling D.A.'s last name with a "t" instead of a "d." However, upon discovering this error, the Department was under no obligation to request additional verification as it had no information D.A. was enrolled or affiliated with any Indian tribe. Further, D.A. was never shown to be L.C. or N.C.'s biological father but was instead delineated as the "putative" or supposed father for which no paternity testing was accomplished. As D.A. was never established to be L.C. or N.C.'s biological father, neither L.C. nor N.C. could meet the definition of an Indian child under 25 U.S.C. § 1903(4)—"Indian child" includes only a minor child that is an

enrolled tribal member or "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."

¶22 Finally, even if the Department's efforts to determine ICWA applicability were arguably not diligent, it is a long-held principle that acquiescence in error takes away the right of objecting to it. *In re A.A.*, 2005 MT 119, ¶ 26, 327 Mont. 127, 112 P.3d 993; *In re A.J.C.*, 2026 MT 80, ¶ 33, 427 Mont 409, ___ P.3d ___. "We will not put a district court in error for an action to which the appealing party acquiesced or actively participated." *In re A.A.*, ¶ 26. Mother had full opportunity to challenge the Department's efforts in investigating whether ICWA was applicable to the Children but did not. Instead, at the show cause hearing, she agreed the Department's ICWA QEW need not testify as the Children were not Indian children and agreed to bring any new information which would alter the determination that ICWA did not apply to the Children to the District Court to re-review the issue. She brought no further information related to ICWA application to the District Court. Further, prior to this appeal, Mother did not object or set forth any challenge to the Department's efforts to determine if the Children were Indian children under ICWA, nor did she present any evidence tending to show a reason to know the Children were Indian children or even a claim that any of the Children were Indian children. It is clear from the record Mother does not genuinely claim the Children are Indian children. ICWA exists to safeguard the best interests of Indian children and to promote the stability and security of Indian tribes and families. It is not intended to be invoked as a procedural technicality to delay and contest termination of parental rights when a parent does not genuinely believe her children are Indian children. Accordingly, we hold that to the extent

the Department's efforts to determine the applicability of ICWA were arguably not diligent, Mother waived this argument by failing to object and acquiescing in those efforts below.

## CONCLUSION

¶23    On the particular factual record before us, the District Court's finding that the Department made diligent efforts to determine whether the Children were Indian children, was not clearly erroneous.  Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE