For Appellant: Kelly M. Driscoll, Montana Legal Justice, PLLC, Missoula, Montana
For Appellee: Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana, Joshua A. Racki, Cascade County Attorney, Valerie M. Winfield, Deputy County Attorney, Great Falls, Montana
Chief Justice Mike McGrath delivered the Opinion of the Court.
***36 ¶1 M.J. (Mother) appeals from an Eighth Judicial District Court order terminating her parental rights to her two children, J.J.C. and R.G., ages nine and three, respectively. We affirm.
¶2 We restate the issue on appeal as follows:
Whether the District Court abused its discretion when it continued with child custody proceedings before conclusively determining the children's Indian status.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 In 2009, due to concerns about Mother's drug use, the Department of Public Health and Human Services, Child and Family Services Division (the Department) became involved with Mother. In 2011, Mother entered into a voluntary services agreement with the Department. Between 2011 and 2016, the Department continued to receive reports alleging Mother was using drugs. In 2016, after receiving a report that Mother was using methamphetamine and dealing drugs out of her apartment, the Department petitioned for Temporary Investigative Authority (TIA) and later adjudication as ***37 youths in need of care (YINC) and temporary legal custody (TLC) of Mother's three children: *151 J.J.C., K.J., and R.G.[1] The children's birth Fathers are: J.C., W.H., and T.G., respectively. The Department alleged that a hair follicle test performed on J.J.C. tested positively for methamphetamine. This petition was the first of two petitions for adjudication and TLC in J.J.C.'s case and the first of three in R.G.'s case.
¶4 In affidavits supporting the TIA and TLC petitions, Child Protection Specialists (CPS) noted they had no reason to believe that any of the children were subject to the Indian Child Welfare Act (ICWA). However, at a May 2016 show cause hearing, the District Court was notified that ICWA possibly applied to K.J. considering K.J.'s father received benefits from the Arapahoe Tribe. The benefits signaled potential for K.J. to meet the "Indian child" designation of ICWA. Yet, further correspondence with the Arapahoe Tribe conclusively determined that ICWA was inapplicable to K.J. The District Court granted the Department authority to investigate and work with the parents and children.
¶5 In October 2016, the Department again filed petitions for adjudication as YINC and TLC for all three children. CPS Mariesa Wallis submitted three identical affidavits in support which included the statement: "To the best of my knowledge and belie[f] the child is an Indian Child subject to [ICWA]." Wallis' affidavit did not reference specific tribes or details concerning possible tribal affiliations. The petition and accompanying affidavits are the sole documents in the record suggesting J.J.C. or R.G. were Indian children.
¶6 The children were adjudicated as YINCs on November 3, 2016, and July 27, 2017. The District Court ordered Mother to complete a treatment plan on November 17, 2016, and August 17, 2017.
¶7 Although TLC was extended to give Mother more time to work on her treatment plan, Mother was not making progress; she repeatedly failed to appear for scheduled visits with the children, did not complete a substance treatment program, and tested positively for methamphetamine.
¶8 On February 12, 2018, the Department filed its Petition for Permanent Legal Custody and Termination of Parental Rights concerning Mother's parental rights to J.J.C. and R.G. The petition alleged that Mother failed to complete her treatment plan and sought ***38 termination pursuant to § 41-3-609(1)(f), MCA. The petition further noted: "Petitioner believes that the above-named Youths are NOT Indian Children subject [to] [ICWA]." The supporting CPS affidavit affirmed this statement.
¶9 Following a termination hearing on May 24, 2018, the District Court terminated Mother's parental rights to J.J.C. and R.G. The District Court's order stated: "Youths are NOT Indian Children subject to the provisions of [ICWA]."
STANDARD OF REVIEW
¶10 This Court reviews a district court's decision to terminate parental rights for an abuse of discretion. In re T.S. , 2013 MT 274, ¶ 21, 372 Mont. 79, 310 P.3d 538. A district court abuses its discretion only if it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. In re Declaring A.N.W. , 2006 MT 42, ¶ 29, 331 Mont. 208, 130 P.3d 619. We review a district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct. In re T.S. , ¶ 21. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that the district court made a mistake. In re T.W.F. , 2009 MT 207, ¶ 17, 351 Mont. 233, 210 P.3d 174.
DISCUSSION
¶11 Whether the District Court abused its discretion when it continued with child custody proceedings before conclusively determining the children's Indian status.
¶12 A court may terminate parental rights when (1) a child has been adjudicated as a *152 YINC; (2) an appropriate treatment plan approved by the court has not been complied with by the parent or has not been successful; and (3) the conduct or condition of the parent rendering him or her unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. Each factor must be supported by clear and convincing evidence. Section 41-3-609(1), MCA.
¶13 On appeal, Mother argues the CPS affidavit declaring that J.J.C. and R.G. were Indian children gave the District Court reason to know the children may be subject to ICWA. Therefore, Mother asserts, the District Court erred when it categorized J.J.C. and R.G. outside the scope of ICWA without first making a conclusive determination, corroborated by a tribe, that the children were not Indian children ***39 pursuant to ICWA. Mother requests that the matter be reversed and remanded back to the District Court to determine the children's Indian status and ICWA applicability.
¶14 ICWA provides heightened federal standards for child custody proceedings involving Indian children. Congress enacted ICWA with the goal "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families. ..." 25 U.S.C. § 1902. ICWA applies only if a child meets the definition of an Indian child, meaning he or she is under eighteen, unmarried, and either: (1) enrolled as a Tribal member; or (2) eligible for enrollment and a biological parent is an enrolled member. 25 U.S.C. § 1903(4). For ICWA determination purposes, "tribes have ultimate authority to decide who qualifies as an 'Indian child.' " In re A.G. , 2005 MT 81, ¶ 14, 326 Mont. 403, 109 P.3d 756.
¶15 The Bureau of Indian Affairs (BIA) guidelines and regulations provide direction for when and how a court must verify whether an Indian child is involved. This Court has historically referred to the BIA guidelines as persuasive authority for interpreting ICWA. In re C.H. , 2000 MT 64, ¶ 12, 299 Mont. 62, 997 P.2d 776. New BIA guidelines for implementing ICWA were issued in February 2015 which replaced and superseded the 1979 guidelines. Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146, 10,147 (BIA 2015). The BIA then engaged in a notice-and-comment period, whereby the 2015 guidelines served as the proposed regulations. New regulations were issued in June 2016 with an effective date of December 12, 2016. The current regulations provide that, during child-custody proceedings, a district court "must ask each participant ... whether the participant knows or has reason to know that the child is an Indian child [and] instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." 25 C.F.R. § 23.107(a) (2016) (emphasis added). The 2016 regulations replace the "reason to believe" language found in the previous guidelines, with the current "reason to know" standard.[2]
***40 ¶16 Although neither party discussed the applicability of the BIA guidelines and regulations throughout these proceedings, both the 2015 proposed regulations and the current regulations serve as persuasive authority. In re C.H ., ¶ 12. The current regulations were not in place when J.J.C.'s proceedings began in May 2016; however, they controlled for the entirety of R.G.'s 2017 proceedings.
¶17 Regardless of whether the "reason to know" or "reason to believe" standard applied, the District Court did not err when it applied the non-ICWA statutory standards. Apart from the October 2016 affidavits, the District Court had neither a reason to believe nor a reason to know that J.J.C. and R.G. were Indian children subject to ICWA. Prior to the May 2016 hearing, the Department presented the District Court with three separate affidavits, each of which stated that to *153 the best of the CPS's "knowledge and belief" none of the children were Indian children. The Department had no indication that ICWA should apply to J.J.C. or R.G. At the May 5, 2016 show cause hearing the District Court specifically inquired: "[T]he first question I have ... is there an [ICWA] issue here?" Counsel responded affirmatively only as to K.J. Moreover, over the next two years of proceedings, no additional information was presented to either the Department or the District Court that either J.J.C. or R.G. were Indian children.
¶18 Even if the October 2016 affidavits were sufficient to meet the reason to know threshold, Mother provides no facts, other than the statements in the October 2016 affidavits, that J.J.C. and R.G. are Indian children. She has not alleged that the children are enrolled members of a tribe, or that she or the children's fathers are enrolled. Remanding the matter for determination of the children's status would have no significant impact on the result.
CONCLUSION
¶19 The District Court's findings were not based on misapprehension of the evidence, and review of the record does not establish that a mistake was made. The District Court's conclusion of law, that ICWA is inapplicable, is correct.
¶20 Affirmed.
We Concur:
JAMES JEREMIAH SHEA, J.
LAURIE McKINNON, J.
BETH BAKER, J.
JIM RICE, J.

K.J. was initially part of these proceedings, but was subsequently dismissed with custody to the birthfather, W.H. K.J. is not included in this appeal.

"The final rule, therefore, uses the statutory language 'reason to know,' rather than 'reason to believe,' as was used in the proposed rule. This is to be more consistent with the statutory text and to be clear that the rule does not set a different standard for triggering notice than what is provided for in ICWA." Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,777, 38,803 (June 14, 2016). Since codification of the 2016 regulations, this Court has mistakenly used the "reason to believe" and "reason to know" standards interchangeably. We acknowledge that the standards are discrete and that the "reason to know" standard governs.