FILED

03/09/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0314

DA 20-0314

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 57N

IN THE MATTER OF:

S.P.,

     A Youth in Need of Care.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DN 17-303
Honorable John W. Parker, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Tracy Labin Rhodes, Labin Rhodes Law, PLLC, Missoula, Montana
(for Father)

          Kelly M. Driscoll, Driscoll Hathaway Law Group, Missoula, Montana
(for Mother)

     For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          Joshua A. Racki, Cascade County Attorney, Matthew S. Robertson, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs: January 20, 2021

Decided: March 9, 2021

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 W.P. (Father) and K.S. (Mother) are the natural parents of S.P. The Eighth Judicial District Court, Cascade County, terminated their parental rights to S.P. in its May 18, 2020 Order Granting Permanent Legal Custody, Termination of Parental Rights with Right to Consent to Adoption. Mother and Father each appeal, raising separate issues.[1] We affirm the termination of Mother's and Father's parental rights to S.P.

¶3 Mother and Father were no longer in a relationship by the time of the Department of Public Health and Human Services, Child and Family Services Division (Department) involvement. Mother has cognitive and developmental delays stemming from Fetal Alcohol Spectrum Disorder (FASD). The Department removed S.P. from Mother's care on August 31, 2017, after a failed Protection Plan, placing her with Mother's adoptive

---

[1] Mother also appeals from the termination of her parental rights to her other child, K.L.N., which the District Court terminated in the same May 18, 2020 Order. We originally consolidated these cases at Mother's request on July 22, 2020. After Mother's briefing was completed in the case, Father moved to unconsolidate the cases on December 30, 2020, explaining he is not a party to the proceedings regarding K.L.N. as he is the birthfather of S.P. and not K.L.N. We granted Father's motion and unconsolidated the cases on that same day. We address the termination of Mother's rights to K.L.N. in a separate, published opinion, *In re K.L.N.*, 2021 MT 56, ___ Mont. ___, ___ P.3d ___.

2

father and his wife. The Department alleged Mother failed to provide for S.P's basic needs and exposed S.P. to domestic violence, extremely unsanitary health conditions, and inappropriate caregivers. Mother and Father stipulated S.P. was a Youth in Need of Care. Father did not seek placement of S.P. with him. In its order adjudicating S.P., the District Court also granted TLC to the Department for a period of six months. Neither parent objected.

¶4 The Department proposed treatment plans for both Mother and Father. Mother stipulated to her treatment plan on December 5, 2017. Father sought multiple continuances of the hearing on objections to his treatment plan. He ultimately stipulated to a treatment plan on December 3, 2018. The Department moved to extend TLC on June 4, 2018. In the accompanying affidavit, the CPS explained Father was not considered for placement due to a history of violent assaults in at least three states and a current, unresolved Partner or Family Member Assault (PFMA) charge against Mother when S.P. was present. Mother and Father stipulated to the extension of TLC.

¶5 On August 28, 2018, Father filed a motion to dismiss with custody of S.P. granted to him, arguing he was the non-custodial, non-offending parent. After a continuance, a hearing on Father's motion to dismiss was held on December 3, 2018. By this time, Father was incarcerated in federal prison in Georgia on assault charges. Father's counsel withdrew the motion to dismiss and stipulated to the treatment plan. The court extended TLC again on June 4, 2019, pursuant to the parents' stipulation. The Department filed for termination of Mother's and Father's parental rights under § 41-3-609(1)(f), MCA, on

August 19, 2019. The initial termination hearing took place on September 24, 2019. Mother's treatment providers, Andrea Savage, LCPC, LMFT, CTF-CBT, and Angela Meyers, LCPC, LAC, testified. Both providers explained they had prior experience working with individuals with FASD. Savage testified she provided Mother with Parent Child Interaction Therapy (PCIT) for over two years. She opined Mother had not been successful in building parenting skills through PCIT. Savage testified Mother had strong nurturing skills but was unable to provide basic structure and predictability for her children. Meyers testified Mother reported improvements in her relationships, but Mother had minimal coping skills and would be overwhelmed if the children were returned to her care. Meyers agreed it could have been beneficial to Mother to have seen her more often.

¶6 On December 9, 2019, Mother filed a Motion for Court Ordered Alternative Dispute Resolution. In the accompanying brief, Mother argued the court should order the parties to mediate a potential guardianship because the Department would not be able to meet its burden to show it provided Mother with active efforts.[2] Mother argued the Department failed to provide her with reasonable accommodations under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973 and failed to provide her with active efforts under ICWA because she had not been offered services or a parenting assessment specifically tailored to treat FASD. The Department responded Mother's treatment plan took her disability into account and her services were tailored to

---

[2] Mother's brief applies ICWA's "active efforts" requirement.

her disability. The Department opposed mediation because it had already considered guardianship, but concluded adoption was more appropriate. The court declined to order mediation. After multiple continuances, the termination hearing concluded on May 1, 2020. CPS Teresa Larson and CPS Supervisor Kami Stone testified Mother's treatment plan had not been successful as she still lacked parenting skills despite engaging in PCIT and counseling for over two years. They further testified Father had not completed his treatment plan and was uncooperative with the Department. Mother testified on her own behalf. She testified she asked the Department if there was anything else she could do to reunify with her children and the Department told her no. Mother's husband, her adoptive mother, and a friend also testified in support of Mother being able to safely parent. Father did not call any witnesses on his behalf. At the end of the hearing, the District Court explained it would take Mother's disability into account when making its determinations, relying on *In re J.B.K.*, 2004 MT 202, ¶ 30, 322 Mont. 286, 95 P.3d 699. The District Court terminated Mother's and Father's parental rights pursuant to § 41-3-609(1)(f), MCA.

¶7 This Court reviews a district court's findings of facts for clear error and conclusions of law for correctness. *In re B.H.*, 2020 MT 4, ¶ 26, 398 Mont. 275, 456 P.3d 233. If the court's findings of fact are not clearly erroneous and if the court's conclusions of law are correct, we will not reverse a district court's decision to terminate parental rights unless we determine the district court abused its discretion. *In re B.H.*, ¶ 26.

**Father**

¶8 Father first argues the District Court erred in not applying the Indian Child Welfare Act (ICWA) to S.P.'s case from the outset. He also argues he was deprived of due process when the court terminated his parental rights when no allegations of abuse and neglect of S.P. were made against him. Finally, Father argues his treatment plan was inappropriate and the District Court erred in terminating Father's rights on the basis of abandonment.

¶9 Father argues the District Court failed to inquire at any hearing whether the parties had reason to know S.P. was an Indian child. The record is void of any suggestion S.P. or either of her parents had any tribal affiliation. None of the factors listed in 25 C.F.R. § 23.107(c) indicating a court has a "reason to know" a child is an Indian child are relevant here. *See also In re S.R.*, 2019 MT 47, ¶ 20, 394 Mont. 362, 436 P.3d 696; *In re J.J.C.*, 2018 MT 317, ¶¶ 17-18, 394 Mont. 35, 432 P.3d 149. Neither the Department nor the District Court ever had reason to know S.P. was an Indian child and Father does not assert S.P. to be an Indian child. The directive in 25 C.F.R. § 23.107(b) to treat the case as an ICWA case thus does not apply and the District Court did not err in failing to apply ICWA to any of the proceedings regarding S.P.

¶10 Father maintains the court violated his due process rights when his parental rights were terminated when the Department never alleged he abused or neglected S.P. and did not include concerns about Father in its initial Petition filed with the court. Father argues the Department should have considered him as the first placement option for S.P. as the noncustodial and non-offending parent and moved to dismiss the case, citing *In re E.Y.R.*, 2019 MT 189, 396 Mont. 515, 446 P.3d 1117, and *In re B.H.*

6

¶11 This argument does not hold up under the facts of this case. Father stipulated to adjudication of S.P. as a YINC. When the District Court also awarded TLC to the Department in its order adjudicating S.P. a YINC, Father did not object and never raised the issue with the court. The Department is authorized to determine the appropriate placement of a child alleged to be or adjudicated as a YINC, unless a party objects and moves for a contested placement hearing with the Court. Section 41-3-440, MCA. Rather than object to S.P.'s placement, Father's counsel specifically stated at the October 2017 show cause hearing and the February 2018 hearing Father was not seeking placement of S.P. with him. In fact, Father did not challenge the Department's placement of S.P. with her maternal grandfather until he filed his motion to dismiss the case on August 28, 2018— a year after S.P. had been removed. By the time the court held a hearing on Father's motion to dismiss, Father was incarcerated in federal prison in Georgia and his counsel withdrew the motion. Further, the record shows the Department expressed its concerns about placing S.P. with Father at its first meeting with him, highlighting his prior assault convictions in other states and the unresolved PFMA case involving Mother in Montana.[3] The Department immediately requested Father submit to an assessment for domestic violence and anger management to alleviate its documented concerns, in addition to seeking a court-ordered treatment plan for Father. Father refused to voluntarily participate in the assessments and objected to the proposed treatment plan and then repeatedly sought

---

[3] These prior convictions and charges for assault and PFMA are clearly "objective, demonstrable circumstances indicative of an imminent safety threat to the child." *In re E.Y.R.*, ¶ 29.

7

continuances of the hearing on his objections to the proposed treatment plan, extending the hearing out for over a year. It was not until Father was incarcerated that his counsel stipulated to the treatment plan at the same hearing at which he withdrew Father's motion to dismiss the case. Further, the Department notified the court of its concerns regarding Father in its first petition for an extension of TLC in June 2018. Given Father's stipulation to adjudication and lack of objection to the initial grant of TLC to the Department or the Department's placement of the child with the maternal grandfather,[4] it makes sense this was the first point in the case at which the Department's concerns about Father were before the court. While Father is correct the Department's initial petition cited only its concerns with Mother as the reason for removing the child, the record in this case shows Father neither wanted or sought immediate placement of the Child with him, nor objected to the Department's initial placement decision, nor was unclear why the Department had not placed the child with him upon removal from Mother. This Court "will not put a district court in error for an action to which the appealing party acquiesced or actively participated." *In re A.A.*, 2005 MT 119, ¶ 26, 327 Mont. 127, 112 P.3d 993. Father failed to preserve this issue for appeal and under the facts of this case, there was no violation of Father's due process rights.

¶12    Turning to Father's challenge that his treatment plan was not appropriate, we note Father ultimately stipulated to his treatment plan and did not raise any objections with the

---

[4] Unlike in *In re E.Y.R.* and *In re B.H.*, upon which Father relies, Father does not allege—and the record would not support—Father's counsel was ineffective for failing to make these objections.

8

District Court regarding the plan after it was adopted by the court. He thus waived any objection to his treatment plan on appeal. *See In re T.S.*, 2013 MT 274, ¶ 27, 372 Mont. 79, 310 P.3d 538. Finally, we reject Father's contention the District Court erred in terminating his parental rights based on abandonment. It is clear from the District Court's order terminating Father's parental rights the District Court terminated Father's rights under § 41-3-609(1)(f), MCA, for failure to successfully complete his treatment plan and his unlikelihood to change in a reasonable time. The District Court did not abuse its discretion in terminating Father's parental rights.

**Mother**

¶13 Mother argues the Department failed to comply with the ADA, failed to provide reasonable efforts to reunify her with S.P., and presented insufficient evidence to support the District Court's conclusion Mother was unlikely to change within a reasonable amount of time.

¶14 While we agree with Mother the ADA applies to dependent neglect cases, as we discuss more fully in the companion case, *In re K.L.N.*, ¶¶ 24-26, the requirements that a treatment plan be appropriate and for the Department to provide reasonable efforts to reunify the family are commensurate with the ADA's reasonable accommodation requirement. A district court need not make specific findings under the ADA when terminating parental rights. If the Department fails to take into account a parent's limitations or disabilities and make reasonable accommodations therefor, then it has not

9

developed an appropriate treatment plan or provided reasonable efforts to reunite the family. Mother does not challenge whether her treatment plan was appropriate on appeal.

¶15 As we have explained previously, failure to provide reasonable efforts can prevent the District Court from determining a parent is unlikely to change in a reasonable time. *See In re C.M.*, 2019 MT 227, ¶ 22, 397 Mont. 275, 449 P.3d 806. Mother alleges the Department failed to provide her with reasonable reunification efforts and thus the Department failed to carry its burden of establishing the criteria under § 41-3-609(1)(f)(ii), MCA, that her conduct was unlikely to change in a reasonable time. Specifically, Mother argues the Department (1) failed to provide her with sufficient access to PCIT, individual therapy, and in-home services; and (2) failed to provide Mother with meaningful visitation opportunities. Mother never raised issues with the services she was provided, sought changes to her treatment plan or services, or brought issues with visitation to the District Court's attention. At status hearings, Mother's counsel reported Mother was doing well and progressing. Mother's December 9, 2019 Motion for Court Ordered Alternative Dispute Resolution did not seek the provision of additional services or reasonable accommodations for Mother, but rather sought an order from the court for the parties to engage in mediation to discuss guardianship rather than termination of her parental rights. The only additional service Mother identified in that motion was an evaluation by a neuropsychologist. But as the Department pointed out in its brief in opposition, Mother's FASD was already taken into account in her treatment plan and the services offered by the Department and further evaluation of her disability was not needed. The Department had

set up PCIT with Savage, a therapist experienced in working with parents with FASD. When Savage suggested Mother should also be in individual counseling, the Department set up counseling with Meyers, who also had experience working with parents with FASD. Nothing in the record shows Meyers or Savage ever made additional recommendations to the Department about the provision of services or Mother requested accommodations in those services and the Department denied those recommendations or requested accommodations. The District Court considered the testimony of Mother's therapists, the child protection specialists, Mother, and Mother's proponents. This Court will not reweigh this evidence. Sufficient evidence supported the District Court's determination Mother was unlikely to change in a reasonable period of time. The District Court did not abuse its discretion in terminating Mother's parental rights to S.P.

¶16     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court did not abuse its discretion. Affirmed.


                                        /S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR