FILED

09/16/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0664

DA 24-0664

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 214N

IN RE THE ADOPTION OF:

X.K.D.,

    a minor child,

B.A.F.,

    Petitioner and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DA 2024-0010
Honorable Leslie Halligan, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        R.J.W., Self-Represented, Federal Way, Washington

    For Appellee:

        Don C. St. Peter, Logan Nutzman, St. Peter O'Brien Law Offices,
P.C., Missoula, Montana

Submitted on Briefs:  July 30, 2025

Decided:  September 16, 2025

Filed:

_____
                   Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 R.J.W. (Appellant) appeals from the Findings of Fact, Conclusions of Law, and Final Decree of Adoption entered by the Fourth Judicial District Court, Missoula County, on October 8, 2024, granting the petition for adoption of the minor child, X.K.D., by Petitioner/Appellee B.A.F. Appellant asserts error on the part of the District Court in granting the adoption petition, including violation of her family's due process rights and the failure to apply protections of the Indian Child Welfare Act (ICWA) with regard to her family's claims to tribal status. Upon review, we affirm the District Court's ruling.

¶3 X.K.D. was born in Missoula County in May 2021, to L.G. (Mother) and M.J.D. Jr. (Father). Their household consisted of Mother, Father, X.K.D., and X.K.D.'s two older half siblings from Father's prior relationship. Tragically, both of X.K.D.'s parents passed away before he reached two years of age.

¶4 Appellee B.A.F. was the mother-in-law of Father in his earlier relationship. She is the biological maternal grandmother of X.K.D.'s two older half siblings, and has no biological relationship with X.K.D. B.A.F. took on a prominent role in the lives of X.K.D. and his two half siblings when the children were removed from the custody of Father and Mother by the Department of Public Health and Human Services, Child and Family

2

Services Division, pursuant to a dependency neglect proceeding. Upon the children's removal, Father enlisted B.A.F.'s help in addressing Mother's substance abuse challenges and to provide stability in the home. She moved in with the family in May 2022. Mother was incarcerated shortly thereafter and died in December 2022 while still in custody. B.A.F. remained in residence with the family after Child and Family Services placed the children in her care and dismissed the dependency neglect case. She provided care for the children and supported Father, whose health had begun to decline. Father passed away in February 2023, and B.A.F. assumed sole responsibility for the needs of X.K.D and his half siblings. Members of Father's family, including his siblings, met with B.A.F. shortly after Father's death and reached an agreement regarding X.K.D. and his half siblings, including that they would remain in the care of B.A.F., who would refrain from undertaking any legal action to acquire custody of the children.

¶5 On March 22, 2023, B.A.F. and a family friend, L.A., petitioned for guardianship of X.K.D and his half siblings. B.A.F. would later testify that she proceeded because she had not heard further from Father's relatives, and she needed authority to facilitate the children's schooling and medical needs. Initially, B.A.F. did not provide Appellant or other members of the paternal family with notice of her impending court date. On May 31, 2023, the District Court granted B.A.F. and L.A. guardianship of X.K.D. and temporary guardianship of his two half-brothers. The court also instructed B.A.F. to provide notice of the proceedings to the paternal relatives. In September 2023 and November 2023, at hearings regarding guardianship of X.K.D.'s half siblings, Appellant and other relatives of Father's, S.W. and M.W., asserted an interest in all of the children's welfare and a desire

3

for appointment as successor co-guardians for them. The court granted this request and issued an order appointing them as successor co-guardians.

¶6 On April 15, 2024, B.A.F. petitioned to adopt X.K.D. in order to offer more permanence and gain clearer authority for purposes of his educational and medical needs. At an initial hearing on June 12, 2024, B.A.F.'s counsel moved to continue the hearing to effectuate service upon three of Father's siblings, including Appellant. Notice of service was filed on July 15, 2024. All of these parties appeared at the hearing on the petition on August 19, 2024, wherein Appellant and other paternal siblings opposed the proposed adoption, citing the parties' earlier agreement, lack of sufficient notice, B.A.F.'s age and the semi-remote location of her home, X.K.D.'s best interests, and that the court should apply the heightened standards applicable under ICWA to the proceedings due to the child's status as a member of the Tribe of Judah of the 12 Tribes of Israel. The petition had asserted that X.K.D. was not an Indian child.

¶7 In the District Court's findings of fact, conclusions of law, and decree, it concluded that the petition for adoption did not violate paternal relatives' due process rights, that adoption by B.A.F. was in X.K.D.'s best interest, and encouraged a continuing relationship with Father's family, which it found B.A.F. was committed to support. The court did not discuss Appellant's claim to a tribal connection. R.J.W. appeals, arguing the issues she raised before the District Court, challenging the District Court's findings of fact regarding X.K.D.'s best interests, and also contending B.A.F. failed to obtain proper consents to the adoption.

¶8 We review a district court's findings of fact to determine whether the finding constitutes clear error. *Boyne USA, Inc. v. Spanish Peaks Dev., LLC*, 2013 MT 1, ¶ 28, 368 Mont. 143, 292 P.3d 432. We will overturn findings of fact "if substantial credible evidence fails to support the findings of fact, if the district court misapprehended the evidence's effect, or if we have a definite and firm conviction that the district court made a mistake." *Boyne*, ¶ 28. Further, we review a district court's conclusions of law for correctness. *Boyne*, ¶ 28.

¶9 Adoptions are governed by Title 42 of the Montana Code Annotated. Section 42-5-101, MCA, contains the requirements for an adoption petition. The statute requires that the petition contain the name and address, if known, of any person entitled to notice of the adoption proceeding. Sections 42-5-101(1)(l), -103(1), MCA. The statute requires the petition provide the circumstances under which the petitioner obtained physical custody of the child. Section 42-5-101(1)(c), MCA. The petition must also specify that ICWA and the Montana Indian Child Welfare Act (MICWA), if applicable, have been complied with. Section 42-5-101(1)(j), MCA. The court will issue a decree of adoption awarding custody of the child to the petitioner if it concludes, applicable here, that the petitioner has maintained physical custody of the child for a period of at least six (6) months, the petitioner has satisfied the notice requirements, and the adoption serves the best interest of the child. Section 42-5-106, MCA.

¶10 Appellant argues that B.A.F. failed to properly notify her and her siblings of the intent to file the petition for adoption of X.K.D., and thereby violated their due process rights. At the initial hearing, B.A.F.'s counsel asked for a continuance to accomplish

service upon Father's siblings, including Appellant, and notice of service was thereafter filed with the court. *See* § 42-5-103(1)(f), MCA. The District Court found that Father's siblings "have had sufficient notice of these proceedings, have appeared at all hearings, and have been given ample opportunity to express their objections to the Petition." It concluded that, "as a matter of law the paternal relative's objection regarding notice are without merit and Petitioner [B.A.F.] has satisfied the notice requirements in her Petition for adoption. Mont. Code Ann. § 42-5-103(3)(d)." The record confirms that Appellant and other paternal relatives fully exercised their rights to attend the proceedings and enter objections, and demonstrates that neither Appellant nor her siblings suffered a violation of their right to due process of the law.

¶11 Appellant argues that no consents to the adoption were obtained from her or any member of the paternal family. An adoption petition must provide notice to persons whose consent is required for the adoption. Section 42-5-103(1)(a), MCA. Here, the death of both of X.K.D.'s biological parents nullified the consent requirement with regard to them. Section 42-2-301(5), MCA, provides that the consent of the legal guardian of the child is necessary "if both parents are dead . . . and the guardian has authority by order of the court appointing the guardian to consent to the adoption." The District Court's guardianship order of November 13, 2023, ordered that B.A.F. was appointed legal guardian of X.K.D., and was "granted all rights and duties specified under Montana law." *See* § 72-5-231(3), MCA ("A guardian may consent to the marriage or adoption of the ward."). Thus, in the circumstances here, B.A.F., as guardian, was the only person whose consent was necessary

6

for the adoption of X.K.D. Appellant and her family possessed no authority to consent to the adoption merely because of their biological relationship with X.K.D.

¶12 Appellant next argues that the District Court's granting of the petition was not in X.K.D.'s best interest. When conducting a "best interest of the child" analysis, the court shall consider "all relevant factors," including the adjustment of the child to home, school, and community, and the duration and reliability of care provided to the child by the petitioner. Sections 42-5-107, 40-4-212, MCA.

¶13 In making its best interest determination, the court considered the time period in which B.A.F. had physical custody of X.K.D and the relationship between them. The court found that B.A.F. "has a long-standing relationship with [X.K.D.]," and, "as observed by the [c]ourt at multiple hearings, [X.K.D.] looks to [B.A.F.] as his mother figure." It found that B.A.F. had worked to provide and promote stability for X.K.D., that he was registered for preschool, and that B.A.F. "is attending to his individual needs for development, including speech therapy, and has facilitated other programs as previously recommended by CFS." It also noted that X.K.D.'s half siblings had resided with B.A.F. for 6-7 years, they had advanced in their schooling, and that Father had not involved other family members in the dependency neglect proceeding with CFS. Considering the paternal siblings' objections to B.A.F., the District Court reasoned that B.A.F.'s "longstanding commitment to the care of the child and his half-siblings, and the sacrifices she made to reside with Father in his home to care for the children . . . far outweigh the complaints" against B.A.F. The court noted that, despite animus expressed by the paternal family, B.A.F. continues to facilitate X.K.D.'s relationship with members of the family and had

7

"expressed a desire to allow the child to maintain contact with his paternal relatives." It encouraged such contact in the future. We thus conclude that the District Court's findings of fact regarding the child's best interest were supported by substantial evidence and not clearly erroneous.

¶14 Lastly, Appellant asserts that the District Court erred by failing to consider X.K.D.'s tribal status, referring to a claim to membership in the Tribe of Judah of the 12 Tribes of Israel. Congress enacted ICWA in 1978 to protect the best interest of Indian children and Indian Tribes. *In re D.E.*, 2018 MT 196, ¶ 23, 392 Mont. 297, 423 P.3d 586. Sections 41-3-1301 through -1329, MCA, contain Montana's adaptation of ICWA (MICWA). Notably, ICWA only applies to children enrolled in a tribe or eligible for enrollment in a federally recognized Indian tribe. *In re L.H.*, 2021 MT 199, ¶ 12, 405 Mont. 173, 492 P.3d 1218. The Federal Register contains a comprehensive list of all federally recognized Indian tribes. *See, e.g.*, *Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs,* 89 Fed. Reg. 99899, 99899-903 (December 11, 2024). This list contains 574 Tribal entities recognized by the federal government. 89 Fed. Reg. 99899, 99899-903.

¶15 We conclude that ICWA and MICWA do not apply to this matter. As stated above, ICWA applies to federally recognized Indian tribes. The Tribe of Judah does not appear on the Federal Register's Tribal entity list. Further, Appellant presented no other evidence, neither is the Court aware of any information, to indicate that X.K.D. qualifies for the placement requirements found in ICWA.

¶16 We conclude the District Court did not err in granting the petition.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18 Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON